IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANA JENNINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-BE-01223-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

I. INTRODUCTION

On October 14, 2005, the claimant, Diana Jennings, applied for supplemental security income under Title XVI of the Social Security Act. (R. 266). The claimant alleges disability beginning on July 24, 2006, because of pain in her left knee and foot resulting from a motor vehicle accident several years ago. (R. 14, 168). The Commissioner denied the claim both initially and on reconsideration. (Compl. ¶ 7). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the hearing was held on March 26, 2008. (R. 14). In a decision issued on August 14, 2008, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, she was ineligible for supplemental security income. (R. 22). The Appeals Council denied review of the ALJ's decision on April 14, 2009, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 4). The claimant has exhausted all of her administrative remedies, and this court has

jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

I.  Whether the ALJ gave proper weight to the testimony of consulting physician, Dr. Romeo.

II. Whether the ALJ properly considered the claimant's testimony when applying the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must view the record in its entirety and take account of the evidence that detracts from the

evidence relied on by the AJL. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432 (d)(1)(A) (2004). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed;
> (2) Is the person's impairment severe;
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1;
> (4) Is the person unable to perform his or her former occupation;
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to finding a disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

When evaluating the testimony of physicians, "the ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error." *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). "The testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Because nurse practitioners are not "acceptable sources," their opinions "cannot establish the existence of an impairment." *Id.* at

1160 (allowing less weight to be given to chiropractor because he is not an "acceptable source").

When attempting to establish disability through her own testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part pain standard. The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (emphasis added); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999).

## V. FACTS

The claimant has an eleventh grade education and was 50 years old at the amended alleged onset date of her disability. (R. 14). She was 51 years old at the time of the administrative hearing. (R. 269). Her past work experience includes a housekeeper, a short order cook and a janitorial worker. (R. 14). The claimant alleged she was unable to work because of constant pain in her left knee and foot, which kept her from standing or sitting for long periods of time. (R. 270). She testified that the pain was an 8 out of 10, and she could not sit or stand for more than 15-20 minutes at one time. (R. 271). The claimant stated that she was unable to lift more than eight pounds or walk more than half a block. *Id.* She also testified that she takes pain medication on a daily basis, and as a result, spends around seven hours per day lying down. (R. 272). The claimant stated that her blood sugar is irregular, which causes her to become dizzy and tired. (R. 273).

*Physical Limitations*

On December 10, 2001, Dr. Morgan Eiland, a radiologist at Cooper Green Hospital, reviewed an x-ray of the claimant's left knee and found no significant osseous (bone) abnormalities. (R. 141).

On August 14, 2004, Janet McCrary, CRNP at Cooper Green Hospital, examined the patient and stated that everything looked good despite some changes to her diabetes medicine. In a letter dated the same day, Ms. McCrary stated that she had been treating the claimant since December 6, 2001. Ms. McCrary noted that the claimant had been free from drugs for 6 years at that time. She also stated that the claimant takes Robaxin, Celebrex and Elavil for the chronic leg pain and insomnia; Glyburide and Glucophage for diabetes; and Prozac for depression. (R. 117).

On November 16, 2004, the claimant was examined by a consulting physician from Alabama Department of Rehabilitation Services. The physician concluded that the claimant was limited to lifting 20 pounds and could not carry, push, pull or climb. The physician also recommended no strenuous activity. However, the physician did not opine that the claimant was disabled. (R. 92A).

On November 8, 2005, an x-ray performed by Cooper Green Hospital on the claimant's left knee showed no fracture, dislocation or bony destructive process. The x-ray did show very small osteophytes (bone spurs) at adjacent articulating margins of the medial femoral condyle (rounded end of a bone) and tibial plateau. The radiologist, Dr. Charles Dunaway, ultimately concluded that signs existed of early/mild changes of degenerative joint disease. (R. 143).

On December 21, 2005, Dr. Romeo, a consulting physician from Alabama Center for Occupational Medicine and Prevention, P.C., examined the claimant at the request of Disability

Determination Services. The claimant complained of bilateral left knee pain and constant, localized low back pain. The claimant stated to Dr. Romeo that an x-ray from 11/08/04 showed early/mild changes of degenerative joint disease. She also stated that she last worked as a janitor in 2003 but had to quit because of left knee pain and swelling. (R. 100). At the time of examination, the claimant was 62 inches tall and weighed 205 pounds. (R. 101). Dr. Romeo reported trace effusion of the left knee with no synovitis (inflamation of joint lining) or laxity. All other joints functioned normally. *Id.* The claimant had no spasms or deformities of the back, and she could completely stoop, kneel, crouch, tandem walk, toe walk and heel walk. He also noted that the claimant's gait was antalgic to the left, but the claimant did not need the cane she was using for mobility. (R. 102). She had 5/5 muscle strength in all groups, intact sensory and 2+ reflexes. Her grip strength was 5/5 bilaterally, and she had a negative straight leg raise and good manual dexterity. (R. 103). The claimant's lumbosacral spine x-ray and range of motion were both normal. (R. 104-06). Dr. Romeo diagnosed the claimant with chronic left knee pain with underlying degenerative joint disease aggravated by severe obesity. (R. 103). In the medical source opinion dated December 21, 2005, Dr. Romeo opined that the claimant was unlimited to sitting. She was limited to standing and walking no more than 7-8 hours per day with further limitation to no longer than one hour at a time. The claimant could lift and carry 10 pounds constantly, 20 pounds frequently and 30 pounds occasionally. (R. 107). She was further limited to only occasionally climbing, kneeling, crouching and crawling. (R. 108).

     On December 28, 2005, the claimant was examined at Cooper Green Hospital complaining of left knee pain. The claimant had a history of left knee pain, and an MRI from 2002 showed a tear at the posterior horn and middle meniscus of the left knee. (R. 197).

On March 20, 2006, a second MRI confirmed the tear, and the hospital scheduled arthroscopic knee surgery for the claimant. (R. 196). The surgery occurred on March 26, 2006, and the claimant followed up with physical therapy. (R. 195).

On September 7, 2007, an x-ray of the claimant's left foot from Cooper Green Hospital showed no abnormalities. (R. 200). On September 10, 2007, the claimant was treated at Cooper Green Hospital for an injury to her left foot. She stated that her daughter dropped a concrete block on the claimant's foot four days earlier. She said she went to the emergency room and was told she had a fracture. (R. 189). Her medical history indicated the following diagnoses: hypertension, low back pain, left knee pain, intravenous drug abuse, history of cocaine abuse, type II diabetes, dysepsia and Hepatitis C. (R. 188). An x-ray performed on September 10 showed no fractures to her left foot, and she received a diagnosis of soft tissue injury. The physician gave the claimant a 3D boot and told her to return in 3 weeks. (R. 189).

On October 25, 2007, Dr. Romeo again examined the claimant at the request of DDS. Her primary complaints were left knee pain secondary to a vehicle accident several years ago and left foot pain as a result of her daughter dropping a brick on her foot. She reported a history of left knee arthroscopy, early/mild changes of degenerative joint disease, type II diabetes and asthma. The claimant also stated that she last worked as a housekeeper in 2004 or 2005 but had to quit because of knee pain. (R. 168). On examination, the claimant's range of motion was normal. (R. 171A-172). She had no deformities, tenderness, synovitis or effusion in any of her extremities; however, she wore a cast shoe on her left leg. Her back had no deformities or spasms, and her gait was antalgic to the left. The claimant used a walker, but Dr. Romeo noted that she did not require the walker for mobility. She could completely stoop, kneel, crouch, tandem walk, heel

walk and toe walk. (R. 170). The claimant has 5/5 strength in her muscle groups and 2+ bilateral reflexes. She had intact sensory and manipulation with good manual dexterity and 5/5 grip strength bilaterally. Also, her straight leg raise was negative. Dr. Romeo diagnosed the claimant with left knee pain with mild underlying degenerative joint disease, obesity and type II diabetes. (R. 171). In his medical source opinion, Dr. Romeo opined that the claimant was unlimited in her ability to sit, stand or walk. She could lift and carry 10 pounds constantly, 20 pounds frequently and 30 pounds occasionally. (R. 173).

*ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 14). At the hearing, the claimant testified that she experienced constant pain in her left knee and foot, and she stated that she could not sit or stand for more than 15-20 minutes without being in pain. (R. 270-71). She also rated her pain an 8 out of 10. The claimant stated that she could not lift and carry anything heavier than a gallon of milk, which weighs around eight pounds. (R. 271). She testified that she could not walk more than one-half of a block at one time. (R. 272).

The claimant further testified that she had not worked since July 2006. (R. 269). She stated that before July 2006, she worked as a janitor, housekeeper and a short order cook. (R. 269-70). She stated that the last time she worked was in 2005 as a janitor, but she had to quit because of knee pain and swelling. (R. 276). Upon questioning from the ALJ about her use of a cane, the claimant stated that she was not prescribed the cane, but she felt she needed it for mobility. (R. 277). The claimant testified that she needed assistance with activities of daily living such as getting into the bathtub and putting on pants. (R. 282).

The claimant also stated that she takes a number of medications for her knee pain (i.e., Methocarbamol and Neurontin), but the medications make her drowsy, so she spends around 7 hours per day lying down. (R. 272). The claimant testified that her blood sugar was high, which made her feel dizzy and tired, but the dizziness and tiredness only affected her about twice per week. (R. 273).

A vocational expert, Dr. Heape, testified regarding the type and availability of jobs that met the claimant's abilities. The ALJ asked Dr. Heape to characterize the claimant's past relevant work as to exertional levels and transferrable skills. Dr. Heape classified janitorial work as medium, unskilled and housekeeping as light, unskilled. She classified cooking as light, low semi-skilled and non-transferrable. (R. 283). The ALJ asked Dr. Heape to consider the claimant's past jobs in light of the following restrictions: closely approaching advanced age; limited education; low average IQ; restricted to simple, repetitive tasks; no pushing or pulling with the lower left extremity; no climbing or uneven surfaces; and the pain experienced is mild to moderate. Dr. Heape responded that with these limitations some medium jobs such as laundry workers, dishwashers and salvage laborers would be available. (R. 284). Dr. Heape testified that light jobs with these restrictions include unskilled cashiering, cafeteria attendants, dressing room checkers, sales clerks, greeters and miscellaneous workers. Dr. Heape noted that sedentary jobs meeting these restrictions included surveillance monitors, unskilled security guards, information clerks and message takers. (R. 285). Dr. Heape opined that based on these restrictions, the claimant's past job as a cook may still be available. (R. 286).

Next, the ALJ asked Dr. Heape to consider the limitations previously stated in addition to the limitation of only occasional stooping and bending. Dr. Heape responded that this limitation

would eliminate the medium jobs. It would also eliminate some of the light jobs such as sales clerk, dressing room checker, and some of the cashiering. However, greeters would be retained. (R. 286). Regarding the sedentary jobs, Dr. Heape stated that she would retain the sedentary jobs previously mentioned. (R. 287).

Then, the ALJ asked Dr. Heape to consider the original limitations in addition to the limitation of sitting and/or standing at her option and disregarding the bending limitation. Dr. Heape stated that the medium jobs would be eliminated as well as the cafeteria attendant and sales clerks. Regarding light work, she noted that about half of the cashiers would allow sitting or standing as would dressing room checker and greeters. Dr. Heape stated that surveillance monitors, information clerks and message takers would still be available as sedentary work. (R. 287-88).

The ALJ then asked Dr. Heape to consider the original limitations in addition to the necessity to use a cane, while disregarding the bending and sit/stand limitations. (R. 288). Dr. Heape testified that the sedentary jobs would still be available, but the light and medium work would be eliminated. The claimant's previous job as a cook would also be eliminated. The ALJ then asked Dr. Heape to consider the effect of the need to lie down for three quarters of a normal work day. Dr. Heape replied that this limitation would eliminate all possible work. (R. 288-89).

Finally, the ALJ asked Dr. Heape to review the medical source opinions (MSO) from both of Dr. Romeo's examinations. (R. 289). After reviewing the 2005 MSO, Dr. Heape opined that the findings would allow for a full range of light work and would be just shy of medium work. (R. 290). After reviewing the 2007 MSO, Dr. Heape stated that the findings allowed for a full range of light work ranging into partial medium work. (R. 291).

*The ALJ's Decision*

On August 14, 2008, the ALJ issued a decision finding the claimant not disabled under the Social Security Act. (R. 22). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the amended onset date of disability. Next, he found that the claimant's left knee pain with mild underlying degenerative joint disease of the left knee, history of torn meniscus of the left knee status post partial arthroscopy and meniscus repair, obesity, hypertension, type II diabetes, hepatitis C, depression, learning disorder and a personality disorder qualified as severe impairments. However, the ALJ concluded that "none of the claimant's impairments taken individually or collectively met any of the impairments defined in the List of Impairments." (R. 21).

The ALJ next considered the claimant's subjective allegations of pain and concluded that her allegations were not totally credible in light of the medical evidence offered to support her allegations. (R. 21). To support his conclusion, the ALJ gave great weight to Dr. Romeo's findings from October 25, 2007. The ALJ found that Dr. Romeo's records indicated that the claimant was able to kneel, stoop, and crouch, and she had normal muscle strength and reflexes. Although the records noted that the claimant walked with an antalgic gait, records show that she only had a soft tissue injury from dropping a cement block on her foot a few weeks earlier. The ALJ found that numerous x-rays also supported his conclusion because none of the x-rays showed any fractures or deformities of the left knee or foot. Medical records of Janet McCrary, a nurse practitioner and the claimant's treating physician, did not dispute the findings of Dr. Romeo. The ALJ then considered the examination by Ann Allen, LCSW. Ms. Allen did not diagnose the claimant with any axis II diagnoses, which supports the conclusion that the claimant

11

does not have more than moderate difficulties with concentration as a result of her mental impairments. Thus, based on the records of Dr. Romeo, the ALJ concluded that "substantial evidence failed to corroborate the degree of severity asserted by the claimant." (R. 19).

After examining all of the evidence, the ALJ concluded that the claimant retained the "residual functional capacity to perform a limited range of light work which allows simple, repetitive, non-complex tasks, with no climbing, no pushing or pulling with the lower left extremity, no working at unprotected heights, no working on uneven surfaces, and with only occasional bending. (R. 18-19). Concurring with the testimony of the vocational expert, the ALJ concluded that the claimant retains the ability to adjust to other work that "exists in significant numbers in the economy" and, thus, is not deemed disabled as defined by the Social Security Act. (R. 20).

## VI.  DISCUSSION

### A.     The ALJ gave proper weight to the opinion of Dr. Romeo.

The claimant contends that the ALJ gave too much weight to the consulting physician, Dr. Romeo. She argues that Dr. Romeo's findings are contrary to the medical evidence of treating physicians, including the claimant's main physician, nurse practitioner McCrary. Furthermore, the claimant argues that Dr. Romeo's findings themselves are inconsistent. This court finds that the ALJ gave proper weight to Dr. Romeo's findings, and the treating physicians' evidence supported the findings of Dr. Romeo.

"The ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error." *Shafarz*, 825 F.2d at 279;  *see also MacGregor*, 786 F.2d at 1053. "The testimony of a treating physician must be given

substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159. However, like chiropractors, nurse practitioners are excluded from the list of acceptable medical sources. 20 C.F.R. § 404.1513(d)(1); *Crawford*, 363 F.3d at 1160. Because nurse practitioners are not "acceptable sources," their opinions "cannot establish the existence of an impairment." *Id.* (allowing less weight to be given to chiropractor because he is not an "acceptable source").

The ALJ gave great weight to the findings of Dr. Romeo, a consulting physician. Because the treating physician, Janet McCrary, was a nurse practitioner, the ALJ may give her testimony less weight. However, Ms. McCrary's findings, as well as the findings of other treating physicians, supported Dr. Romeo's opinion. Multiple x-rays from treating physicians showed no abnormalities or fractures of the claimant's left knee and foot. Ms. McCrary noted in 2004 that the claimant suffered from chronic leg pain and prescribed the claimant pain medications. However, Ms. McCrary made no mention that the severity of the claimant's pain was of such a level to warrant disability. The treating physicians' findings do not dispute Dr. Romeo's conclusion that the claimant was unlimited in her physical capabilities.

The claimant also argues that the ALJ erred in giving great weight to the opinion of Dr. Romeo because Dr. Romeo's findings in 2007 are inconsistent with his findings in 2005. In 2005, Dr. Romeo limited the claimant to standing and walking no more than 7-8 hours per day with further limitation to no longer than one hour at one time. He also limited her to only occasionally climbing, kneeling, crouching and crawling. The claimant underwent surgery for a meniscus repair in 2006, in which the physician fully repaired the meniscus. In 2007, Dr. Romeo placed no limitations on the claimant. The court notes the logic that the meniscus repair could

account for the claimant's improved condition in 2007. Furthermore, a person's condition could logically improve on its own in two years time.

Therefore, this court concludes that the ALJ gave proper weight to Dr. Romeo's opinion, and substantial evidence exists to support the ALJ's decision.

>	B.	The ALJ properly discredited the claimant's subjective complaints when applying the Eleventh Circuit's pain standard.

The claimant argues that the ALJ improperly discredited the claimant's testimony when applying the Eleventh Circuit's three-part pain standard. This court finds that the ALJ properly applied the three-part pain standard and that substantial evidence exists to support the ALJ's decision that the claimant is not disabled.

A claimant must satisfy two parts of a three-part pain standard when attempting to establish disability through her own testimony of pain or other subjective symptoms. "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Wilson*, 284 F.3d at 1225 (emphasis added); *see also Holt*, 921 F.2d at 1223; *Kelly*, 185 F.3d at 1215.

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995); *see also Holt*, 921 F.2d at 1223. "If the Commissioner decides not to credit [the claimant's] testimony, he must discredit it explicitly, and articulate explicit and adequate reasons for doing so." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure

to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that testimony to be accepted as true and the case be remanded for further consideration in light of that testimony. *Id.*

In applying the pain standard, the court must first address whether substantial evidence supports the ALJ's finding of the underlying medical condition of mild degenerative joint disease. An MRI from 2002 showed a tear in the claimant's meniscus. However, the meniscus repair occurred in 2006, leaving the claimant with mild degenerative joint disease that Dr. Romeo diagnosed in 2005. Thus, the record supports the ALJ's acknowledgment of the claimant's underlying medical condition of degenerative joint disease.

Next, the court must evaluate whether substantial evidence supports the ALJ's decision regarding the second or third part of the standard. In making his decision, the ALJ referred to the findings of Dr. Romeo. The claimant testified that her left leg and knee pain is so severe that she is unable to sit or stand for more than 15-20 minutes at one time. She also stated that she has to lie down for 7-8 per day hours because of the side effects of her pain medication. The claimant further testified that her pain severely limited her ability to independently perform routine tasks such as bathing and dressing and thus, would affect her ability to perform work tasks. The level of severity that the claimant alleged is not supported by substantial evidence. In his 2007 examination, Dr. Romeo found that the claimant was able to completely stoop, kneel, and crouch, which renders less credible the claimant's testimony that she needed assistance with bathing and dressing. Dr. Romeo further found that the claimant was unlimited in her ability to sit or stand, which discredits the claimant's allegation that she can only stand or sit for about 15 minutes. Because Dr. Romeo found the claimant unlimited in her physical capabilities, medical

evidence fails to support the claimant's allegation that she needed a cane for mobility. Furthermore, the claimant, herself, testified that no doctor prescribed the cane.

The claimant also stated that the pain in her left knee and foot was an 8 out of 10. Medical evidence fails to support the claimant's allegation. The claimant's knee arthroscopy occurred in 2006, and she followed up with physical therapy. Nothing in the medical record suggests that the claimant suffered lingering effects from the surgery. Furthermore, numerous x-rays performed on the claimant's left knee and foot before and after surgery showed no fractures or abnormalities. Records do show that the claimant presented many times throughout the relevant years with chronic left knee pain. However, a chronic pain diagnosis makes no allusion to the severity of the pain, and nothing in the record shows that the level of chronic pain was severe enough to credit a debilitating pain level. Therefore, the record supports the ALJ's conclusion that the objectively determined degenerative joint disease was not severe and that medical evidence failed to support the claimant's subjective pain.

The ALJ acknowledged the claimant's diagnosis of mild degenerative joint disease. However, objective medical evidence shows that the effects from this condition are <u>mild</u>; thus, the condition fails to be severe enough to support the claimant's subjective pain level. The ALJ stated that if the claimant complies with her assigned residual functional capacity, she can expect no more than "mild to moderate" limitations on her ability to work. Therefore, the ALJ correctly found that "substantial evidence fails to corroborate the degree of severity asserted."

This court concludes that the ALJ properly applied the pain standard and substantial evidence supports the ALJ's decision to discredit the claimant's testimony.

## VII.  CONCLUSION

For the reasons stated above, this court concludes that the decision of the ALJ is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 3rd day of August 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE